UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| v. } | |
| } | Case No.: 2:16-cr-00116-MHH-JHE-3 |
| SHARON B. KNOX, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION AND ORDER

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, a district court may modify a criminal sentence if a defendant demonstrates that she has exhausted available administrative remedies and that "extraordinary and compelling reasons" warrant sentence reduction. *See, e.g.*, *United States v. Ben-Yhwh*, No. 15-00830, 2020 WL 1874125, at *2 (D. Haw. Apr. 13, 2020). The defendant in this case, Sharon B. Knox, has filed a series of motions for compassionate release based on her underlying health conditions and her vulnerability to COVID-19. (Docs. 80, 81, 87, 88). COVID-19 is a new human coronavirus that spreads quickly, especially in facilities like prisons with close living quarters. Currently, there is no vaccine for COVID-19. There are more than 2 million confirmed cases of COVID-19 in the United States, and, to date, more than 100,000 individuals in the United States have died from the extremely serious

complications of the virus. As of June 10, 2020, there were 2134 federal inmates and 190 BOP staff who had confirmed positive COVID test results. As of June 10, 2020, 79 BOP inmates have died from COVID. https://www.bop.gov/coronavirus (last visited June 11, 2020).

In her motions, Ms. Knox has demonstrated that she has exhausted her administrative remedies. (Doc. 81, pp. 3–4). Therefore, the Court must determine whether extraordinary and compelling reasons justify a modification of her sentence. 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a district court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.").

Congress has not identified specific circumstances that rise to the level of "extraordinary and compelling" reasons for a sentence reduction, but U.S.S.G. § 1B1.13 cmt. n.1., the United States Sentencing Commission's policy statement relating to sentence reductions, sheds light on the issue. The Commission has indicated that "a medical condition of the defendant [that] substantially reduces his ability to provide self-care in prison, (B) the advanced age of the defendant, and (C)

the defendant's family circumstances" may constitute extraordinary and compelling reasons for a sentence reduction. *United States v. McCall*, 2020 WL 2992197, at *2 (M.D. Ala. June 4, 2020). The Commission also recognizes "a 'catchall' provision where the Director of the BOP finds [that] 'other reasons' exist that are 'extraordinary and compelling.' United States Sentencing Commission Guidelines Manual § 1B1.13 cmt. n.1(D)." *McCall*, 2020 WL 2992197, at *2. According to the Commission, before reducing a sentence, a district court must find not only that "extraordinary and compelling reasons warrant the reduction" but also that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.[1]

Ms. Knox has demonstrated extraordinary and compelling reasons justifying a sentence reduction because she is housed in Aliceville FCI, a BOP facility that has recorded cases of COVID-19, https://www.bop.gov/coronavirus (last visited 6-11-20), and she has several conditions that place her at a high risk of hospitalization requiring intensive care unit admission and a high risk of morbidity if she should

---

[1] There is some debate about § 1B1.13's application to motions for compassionate release filed by a person other than the BOP. The Court looks to § 1B1.13 for guidance even if the guideline is not directly applicable to Ms. Knox's motion for compassionate release. *McCall*, 2020 WL 2992197, at *2 ("[T]his policy guidance has not been updated since the passage of the First Step Act in December 2018, Pub. L. No. 115-391. This court joins many others around the country in finding that, with regard to any inconsistency between the statute and the policy statement, the policy statement serves as guidance, but does not limit the court's authority.").

contract COVID-19.[2] Ms. Knox is a few months short of her sixty-fourth birthday. (Doc. 81-1, p. 2). Advanced age is a predictor for COVID complications. As of April 11, 2020, the CDC attributed to COVID more than 20% of the deaths that it recorded for individuals ranging in age from 55 to 64 years. https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm (last visited 6-11-20). In 2018, after she began serving her sentence in this case, Ms. Knox was diagnosed with Parkinson's Disease. (Doc. 81-1, p. 2). According to the CDC, Parkinson's Disease is a neurologic disorder that is a "risk factor for severe outcome from respiratory infection." https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm (last visited June 11, 2020); *Ben-Yhwh*, 2020 WL 1874125, at *3. Ms. Knox also has hypertension and restless leg syndrome, and she suffers from excessive sleepiness, dizziness, numbness in her hands, seizures, and weakness. (Doc. 81-1, pp. 4–5). Her mental health conditions include depression and severe anxiety. (Doc. 81-1, p. 5). She is a former smoker. (Doc. 81-1, p. 4); *see generally* (Doc. 81-1, pp. 1–9). The CDC lists hypertension and mental health conditions as chronic diseases that are risk factors for severe outcome from respiratory infection. Former smokers also are at risk. Individuals with one or more risk factors are most vulnerable to ICU admission. https://www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm (last visited June 11, 2020). Ms. Knox's significant vulnerability to a severe outcome if

---

[2] The Court does not have data about the extent of COVID testing at Aliceville FCI.

she contracts COVID is an extraordinary and compelling circumstance that weighs in favor of a modified sentence. *Ben-Yhwh*, 2020 WL 1874125, at *3.

Ms. Knox has demonstrated that she is not a danger to the safety of any other person or to the community. Ms. Knox is in prison because she was selling methamphetamine, largely to finance her own addiction. The Court does not take Ms. Knox's crime lightly, but the Court anticipates that Ms. Knox will not return to drug distribution because she knows that if she does, she will return to prison. Moreover, Ms. Knox is not being released without significant restrictions on her liberty. Upon release from BOP custody, Ms. Knox will be placed in home confinement at her daughter's house in Hayden, Alabama. Ms. Knox will be quarantined for the first 14 days to prevent potential transmission of COVID to her daughter and to the community. During her four years of incarceration, Ms. Knox has taken several educational courses, and she has participated in drug education. She has completed her financial obligation. BOP describes Ms. Knox as a low risk for recidivism. (Doc. 80, pp. 2–11). Given the significant risks posed by continued incarceration, a reduced sentence involving home confinement is sufficient but not greater than necessary to satisfy the sentencing factors in 18 U.S.C. § 3553(a). This modified sentence provides the best opportunity for Ms. Knox to receive the treatment she will require for Parkinson's Disease.

Accordingly, the Court reduces Ms. Knox's sentence to time served as of June 15, 2020 at 10:00 a.m.  Ms. Knox shall serve a period of supervised release equal to her remaining prison term, to be followed by the originally ordered term of supervised release.  Upon release from Aliceville FCI, Ms. Knox shall self-quarantine at her approved residence for 14 days, except for necessary medical treatment and only upon prior notice and approval by the probation officer, except in a true emergency.  Upon completion of the 14-day quarantine, Ms. Knox shall be placed on home confinement equal to her remaining term of imprisonment, and she shall be monitored by location monitoring technology under the administrative supervision of her probation officer.  Ms. Knox must comply with all requirements of the location monitoring program and must pay for the cost of monitoring unless the probation officer determines she does not have the ability to do so.  During the period of monitoring, Ms. Knox is restricted to her approved residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances or other court-ordered obligations, and other activities pre-approved by the probation officer. The form of location monitoring technology used to monitor her will be at the discretion of the probation officer.  Ms. Knox must have access to a telephone with video capabilities to allow her to communicate with her probation officer.  The standard conditions of

supervised release of record in this Court shall apply during Ms. Knox's term of home confinement.

Ms. Knox is advised that if she fails to abide by any of the standard conditions of supervised release or any of the additional conditions stated in this order, the Court will not hesitate to return her to prison if her actions warrant imprisonment.

**DONE** and **ORDERED** this June 15, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE